**H.K. ENTERPRISES, INC., Plaintiff,**

**v.**

**ROYAL INTERNATIONAL INSURANCE HOLDINGS, LTD., et al., Defendants.**

**No. 1:91CV0255.**

United States District Court,
N.D. Ohio, E.D.

May 31, 1991.

Zygmunt G. Slominski, Mase, Mergenthaler & Slominski, Cleveland, Ohio, for plaintiff.

Mark Herrmann, Katherine B. Jenks, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

H.K. Enterprises, Inc., an Ohio corporation, brought this action arising out of an insurance contract dispute against three English defendants: Royal International Holdings, Ltd., R.A.S. Finance, and Abel Abu Namous. H.K. Enterprises filed its complaint in the Cuyahoga County Court of Common Pleas, and Royal International removed the case to this Court on the basis of diversity of citizenship. Neither R.A.S. nor Abu Namous have filed any pleadings in this case, and they have apparently not successfully been served with process. The Court now grants Royal International's motion to dismiss this case because the doctrine of *forum non conveniens* dictates that this case should be heard by the English courts.

### I.

H.K. Enterprises alleged that Abu Namous and Abu Namous' company, R.A.S., purported to broker mortgage insurance required for H.K. Enterprises' acquisition of two commercial properties in Ohio. H.K. Enterprises had obtained a $4.6 million financing commitment through Omni–Commerce, S.A., a Swiss finance company. Omni–Commerce required H.K. Enterprises to obtain mortgage insurance, and Abu Namous and R.A.S. purported to have secured the insurance on H.K. Enterprises' behalf through Royal International. According to H.K. Enterprises, which reached an "agreement" with Abu Namous and R.A.S. in England, Abu Namous held himself out as authorized to act on behalf of Royal International. In addition to travelling to England, H.K. Enterprises' representatives spoke to Abu Namous by telephone and received trans-Atlantic fax transmissions in their Ohio office during the negotiations. However, the mortgage insurance never materialized, and H.K. Enterprises claims to have sustained significant financial losses as a result.

In bringing its motion, Royal International emphasizes that all three of the defendants are English, and that Royal International neither does business in the United States nor sells mortgage insurance anywhere in the world.[1] In addition, R.A.S. and Abu Namous do not appear to be amenable to service of process in the United States, and Royal International indicates that it might wish to file cross claims against those defendants. Royal International also contends that none of the defendants have any assets in the United States which could be used to enforce a judgment.

### II.

The doctrine of *forum non conveniens* provides this Court with the discretion to dismiss actions which would be more appropriately litigated in another forum despite the fact that venue and jurisdiction are technically proper.[2] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504–07, 67 S.Ct. 839, 840–42, 91 L.Ed. 1055 (1947); *see also Stewart v. Dow Chemical Co.*, 865 F.2d 103 (6th Cir.1989); *Kryvicky v. SAS*, 807 F.2d 514 (1986).[3] Courts must be mind-

---

1. H.K. has submitted materials to this Court indicating that Royal International, or its subsidiaries, may in fact do some insurance business in the United States.

2. H.K. Enterprises' arguments concerning personal jurisdiction, based on Royal International's alleged contacts with this forum, are therefore irrelevant.

3. It is generally settled that a federal court sitting in diversity should apply the federal law of *forum non conveniens*. *See* 1A *Moore's Federal Practice* (1990) ¶ 0.317[2]. In any case, Ohio law is essentially identical to the United States Supreme Court precedent governing this issue. *See Chambers v. Merrill–Dow Pharmaceuticals*, 35 Ohio St.3d 123, 519 N.E.2d 370 (1988).

ful that a plaintiff's choice of forum should rarely be disturbed, and they may dismiss a case under *forum non conveniens* only if the balance of the relevant considerations tips strongly in favor of the alternative forum. *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 842. The Court may not refuse to dismiss a case, however, simply because the alternative forum has law, choice of law rules, or procedures less favorable to the plaintiff than those found in American courts. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247–55, 102 S.Ct. 252, 261–65, 70 L.Ed.2d 419 (1981).

▮▮▮ As a threshold matter, the Court must determine whether an adequate, alternative forum is available. *Reyno,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. In this case, the parties agree that the English courts could provide an alternative forum, and the Court cannot conclude that the English forum is somehow "inadequate" simply because the English rules regarding juries, contingency fees, and discovery differ from those of this Court. *See Reyno,* 454 U.S. at 252 n. 18, 102 S.Ct. at 264 n. 18. Next, the Court must weigh various "private" and "public" factors in determining whether to dismiss the case. In *Gilbert,* the Supreme Court listed the following examples of relevant private interests of the litigants:

(1) "the relative ease of access to sources of proof";

(2) the "availability of compulsory process for attendance of unwilling witnesses";

(3) "the cost for obtaining attendance of willing witnesses";

(4) the possibility of inspecting the premises, if appropriate; and

(5) "all other practical problems that make trial of a case easy, expeditious and inexpensive."

330 U.S. at 508, 67 S.Ct. at 842. The Supreme Court also suggested that questions of the enforceability of a potential judgment could be considered. *Id.* The Court then enumerated the following factors implicating the public interest:

(1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their origin;

(2) the burden of jury duty on members of a community with no connection to the litigation;

(3) the "local interest of having localized controversies decided at home"; and

(4) the appropriateness of having diversity cases tried in a forum which is familiar with the governing law.

*Id.* at 508–09, 67 S.Ct. at 843.

The Court finds, first, that the private interest factors weigh heavily in favor of the English forum. The vast majority of witnesses are in Europe, and most of them are in England. The only witnesses who would have to travel to England would be the representatives of H.K. Enterprises who initially traveled to England to negotiate the transaction at issue in this case.[4] In addition, R.A.S. and Abu Namous may not be subject to the power of this Court, but English courts would be able to exercise compulsory process over them; similarly, any judgment against R.A.S. and Abu Namous would be difficult, if not impossible, to enforce in the United States. Finally, H.K. Enterprises alleges that Abu Namous used an office which appeared to belong to Royal International, and a view of that site would be impossible for an American court.

Second, the Court concludes that the public interest factors also favor the English forum. The transaction at issue in this case—the attempted purchase of mortgage insurance—had little connection with the United States, much less Ohio, notwithstanding the fact that H.K. Enterprises intended to use the insurance which it purchased to secure its investment in two Ohio properties. In addition, it appears that

---

**4.** Royal International has indicated that section 2(1) of England's Civil Evidence Act would permit the witnesses to "testify" in writing if they did not wish to travel to England, and, in any case, "inconvenience to the plaintiff is only one factor used in the balancing process, and it alone will not bar dismissal based upon *forum non conveniens.*" *Kryvicky,* 807 F.2d at 517 (citation omitted).

English law would apply even if the case remained in Ohio, and this Court is disinclined to "untangle problems in conflict of laws, and in law foreign to itself." *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843; *see Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820–21 (6th Cir.1990) (under Ohio law, law of jurisdiction where alleged fraud occurred governs claims of tortious fraud and/or misrepresentation); *see also Syndicate 420 at Lloyd's London v. Early American Ins. Co.,* 796 F.2d 821, 831–32 (5th Cir.1986) (complex litigation involving insurance contacts purchased in London, and requiring application of English law, properly dismissed for *forum non conveniens* ). Finally, this Court is not inclined to burden its docket or its jurors with a case with such minimal local connection.

### III.

Accordingly, the Court concludes that this case should be dismissed on the grounds of *forum non conveniens,* and the case is dismissed.

IT IS SO ORDERED.